Good morning, Your Honors. May it please the Court, Dana Sontag on behalf of the appellants in this case with me today but not arguing is Matthew P. Dacey of San Joaquin County Counsel's Office. Your Honors, I am here to argue a pure legal issue as to when officers who arrest somebody are entitled to qualified immunity for the arrest and when jail custodial officers are entitled to qualified immunity. I want to argue a closely related issue of when local governmental entities are not liable under the Monell Doctrine. Our summary judgment showed that these defendants are... The Monell Doctrine is not in front of us, is it? It's not precisely in front of you, Your Honor, but the court... Because as I understand it, the County of San Joaquin and the City of Lathrop are still in the case in the District Court. Correct, Your Honor. That's before the District Court. If this Court wishes, the Court could rule on that because it is so important. Why would we rule on that? The only reason that I know of that we would rule on anything is if the District Court had ruled in an immunity case. If they don't rule, we have no jurisdiction. I think the Court can exercise jurisdiction over it if it wishes for judicial efficiency purposes, but Your Honor... Before the Court even rules? I believe it's so inextricable. What's your bet? The inextricable? Inextricable. Oh, come on. It seems to me that somebody's got to rule on something before I can get jurisdiction. I understand, Your Honor. Let me focus, then, on the individual officer's liability, and I'll focus... I'll start with the first cause of action, the first claim for relief for false arrest. And this is the District Court's main error in this case, Your Honor. The Court ruled that it is not appropriate to grant summary judgment unless the evidence supports only the conclusion being urged by the defense. And the Ninth Circuit has stated on a number of occasions that that is not the law. It formerly was the law in the Ninth Circuit, but the Hunter v. Bryan case changed that by the U.S. Supreme Court. And in Conner v. Hyman, this circuit held that as long as it is reasonable or even more reasonable, the officer is still entitled to qualified immunity. The officer can be wrong as long as he's reasonable, right? Yes, Your Honor. Right. And what did the officer... On what basis did the officer arrest? The officer arrested on the basis... We cited 11 signs of intoxication in footnote 2 of our opening brief, but essentially the individual was walking around close to midnight. Well, as I understood it, the District Court fashioned and focused on intoxication by alcohol. The District Court did, Your Honor. And therefore, the District Court addressed whether there was an arrest that could receive immunity based on intoxication by alcohol. And they made the decision, correct? I'm not sure the District Court expressly stated that. That may be an inference that can be drawn from the Court's opinion. Well, my worry, I guess, I didn't ever see where the District Court addressed the issue as to controlled substances. Correct, Your Honor. And we cited in our moving papers, and we pointed this out on our appeal, that the Archuletas, the other witnesses here, said, both of them testified in deposition, we thought Mr. Lum was on drugs. Well, I guess my worry is this. Based on my reading of the District Court, it's suggested that we're talking about arrest by intoxication by alcohol. Have I even got a final judgment as to intoxication by controlled substances? The District Court ignored that point, Your Honor. We argued... So then, if it's ignored, how do you appeal it to me? Well, because it's an interlocutory appeal that's proper based on the record before the District Court. Well, but the honest truth is, I'd like some more facts about it, intoxication by controlled substances. Well, we don't... I get all... Well, let's go at it this way. When I look at these motions, I look at all of the facts as alleged by that person who doesn't want the officers to get immunity, correct? Yes, Your Honor. I take all of their facts as true. I think you take their evidence as true, Your Honor. Right. Well, okay. Good correction. So taking that evidence as true, then I determine if the officers would have violated the law and if the law is so well known that they should have known they were violating, correct? Yes. All right. As to the 14th Amendment claim, was that ever the issue? I'm sorry, was what? Was immunity ever the issue? We did argue immunity... No, I'm not talking about what you argued. What did the District Court do with the 14th Amendment claim? The District Court found that... The District Court made a merits decision on the 14th Amendment claim, correct? It did, Your Honor. So that... I have no jurisdiction as to that claim. Well, we... The only way I get jurisdiction is if some way you can say it's inextricably intertwined or otherwise, we got to wait for all of the claims to go through the District Court, correct? Well, Your Honor, we... Because there was no immunity determination? We argued qualified immunity. The Court... I'm not worried about what you argued. I'm worried about what the District Court did. The Court did not make a finding on qualified immunity. So at that point, I have no jurisdiction over that claim until it makes it or I've got to find it inextricably, inextricably, not easy for an Idahoan to say, intertwined, correct? Correct, Your Honor. All right. And we think it is. Well, I in those situations about that. So if I look at what we have in front of us, the only real thing that comes to me as it relates to qualified immunity is an arrest for intoxication by alcohol. All of the rest, you've got to get through by issues. I think that's correct, Your Honor. And... And if I don't agree that it's assumed, then I can't... I can't really act on that, correct? Unless the court finds it's inextricably intertwined. All right. So let's look at the intoxication by The plaintiff has suggested that... I mean, that's the worry that I have is that now I can't really look at how you would want it or how the police officer would want it, but I have to look at what the plaintiff would want. We have two witnesses, the Archuletas, who saw Mr. Lum very briefly through a screen door and thought he was on drugs and didn't smell alcohol. And a bartender who, in the middle of the night, in the middle of the street, when it was dark, saw Mr. Lum and didn't smell alcohol. Contrast that with the officers, and we don't say you're to disbelieve... Well, as I look at the... As I look at the evidence, and I'm trying to give you every credit, so I want you to tell me when I'm wrong, it seems to me that if I'm really looking at the alcohol and I'm looking at what the officers approached him, but there's nothing in there that say he was staggering, he was slurring, or they exuded alcohol. Your Honor, that's all in the record. It's in the arresting officers booking report. It's on page two of it, which is page 120. Now, we're talking about the plaintiff's facts. Well, the plaintiffs didn't submit the evidence of that, but we did, and the evidence we have on page 129. But now you're suggesting that I should ignore what the plaintiffs had said and submit your evidence instead? No, Your Honor. I'm suggesting that there's no evidence indicating that the officers didn't observe these facts that they set out. I think that's exactly what the plaintiffs are suggesting, based on those who have seen the person prior, those who have seen the person after, that what they're really suggesting is that there is no evidence of staggering or slurring or exuding alcohol. That, in fact, it was quite opposite that. So if we leave those facts out, Your Honor, they don't contest that he was walking around barefoot, meandering with vomit on his shirt. They don't contest the red watery eyes that my officers had a chance to see because they were with him for about a half hour, and none of that is disputed. And based on that, the officers may have been mistaken. We concede that, but they reasonably believe that, yes, this person may well have been very drunk and clearly ---- They said that he smelled of intoxicants, true? They did, Your Honor. Intoxicants would usually be alcohol, I suppose. I don't suppose most drugs leave you smelling. I infer alcohol, Your Honor. So they said the guy is staggering, slurring, smells of alcohol. Witnesses on the other side say he didn't smell of alcohol. There's just no alcohol involved. They said they may be wrong. But isn't that a question of fact? I think it's – there's a question of fact as to whether he really exuded a smell of alcohol, but there's no question of fact that the officers believe what they saw. Well, but there is a question of fact of whether they believe he smelled like alcohol when other people say he didn't smell like alcohol at all. Well, I – And part of the officer's reason, probably an important part of it, is he looks blurry-eyed like people on alcohol, he smells of alcohol, he's staggering like somebody on alcohol, and that's the basis on which they arrested him, apparently, according to the report. Yes, Your Honor. True? Yes. And all these other witnesses say, no way, he wasn't doing any of those things. That's what they say. Now, can an officer reasonably believe somebody is staggering, smelling of alcohol and has red, blurry eyes when he doesn't? Well, nobody contested the red, blurry eyes. That's not a fact in dispute. But I agree with you on the – Well, let's not – let's not get worried about a little detail. Let's talk about staggering around and smelling of alcohol. Now, if you really – if everybody else looking at him says, gee, I don't see that, can an officer reasonably believe the person is staggering and smelling of alcohol and other people don't? Again, Judge Fernandez, the other individuals had a very brief encounter. One – two of them threw a screen door, they were scared of him, and the officers spent a large amount of time with him and had an opportunity to observe that these people did not have. You're talking about – you're shifting the question, I believe, because the question is, if indeed he did not smell of alcohol and was not staggering around, if indeed that's true, then it would be difficult for an officer to have a reasonable belief that he was smelling of alcohol, wouldn't it? Can an officer have a reasonable belief right now, walk up to me and say, that guy smells of alcohol? What I would come back to you, Your Honor, is the ability – is the opportunity to observe these things. I have about two minutes left. I'm saying he's – let's say he's observing to a fairly well. I'm sorry, Your Honor? He's observing to a fairly well. And he says, that guy smells of alcohol. I just think that the fact that other people didn't smell it doesn't mean these officers didn't smell it. Thank you. I'd like to reserve two minutes for rebuttal. Thank you, Your Honor. I would want you to talk about one thing when you come up with a rebuttal.  Thank you, Your Honor. May it please the Court, my name is Beau Burbidge, counsel for Appellees Jerry Lund and Dorothea Timmons, who are in the courtroom with us here today. Your Honor, counsel brought up two issues that we'd like to address and that the – Your Honors hit upon. And the first is regarding the Fourth Amendment. As this Court was indicating, factual issues abound in this – on this claim. Counsel, could you, on that claim, could you please focus on – on page 9 of the And I wonder why it matters. If the facts, it seems to me, some of them indicated that Mr. Lim may have been intoxicated, and some of them indicated that he may have been under the influence of some other kind of drug, the police officers, at least one of them was aware that he had a mental health history and thought he was – he said off his meds. But I wonder whether the question isn't whether there was probable cause to take him into protective custody under any of those scenarios. Why was that unreasonable? Under penal code 647, you can arrest a person for probable cause if they are intoxicated, either under drugs or alcohol. Right. The focus here is that the police officers believed he was intoxicated under alcohol. Why does that matter, though? I appreciate that, but I don't know why it matters. Why does that make the – Because whether they were given – whether they had probable cause, it's their the court focuses on. Well, they would have either way, though. That's what I'm getting at. Either way, if he's exhibiting the signs that we're talking about, which could be consistent with being under the influence of a street drug or alcohol, right? It could be consistent, but there's been no evidence presented that he was under the influence of street drugs. But the question isn't Monday-morning quarterbacking. We don't do that. We're asking about qualified immunity. And as we know, police officers can be wrong as long as they're not unreasonable. So could you speak to that, please? They can be wrong as long as they're not unreasonable. Under the facts that we've presented, though, Jeremy Lum was acting fairly normally. He was not under – showing any signs of intoxication, meaning stumbling, staggering, smelling of anything, mumbling, slurring his words. Well, even the folks whose home he approached said that they thought he was under the influence of drugs. And there's an indication that one of the officers said that they thought he might have been off his meds, because there's familiarity that this gentleman suffered from a mental illness. So why is that unreasonable for them? It's unreasonable for them because they – if they believe, which is one of the disputed facts, if they believe that he's having a bipolar episode, that he's having a mental health episode, then they don't have the right to say, we're going to arrest you for being a drunk or we're going to arrest you for being intoxicated. You're having a mental health episode. You should be held on a 5150. You should be brought to family. You shouldn't be arrested as a drunk. That's a violation of Fourth Amendment rights. So your contention, then, is that they may not have lacked probable cause, but that they may have arrested him for the wrong reason. No. They lacked probable cause because you have probable cause to arrest someone if they're in violation of 647, if they're showing signs of alcohol or drug intoxication. If they think he's having a mental health episode, they don't have probable cause to arrest him for this law. Okay. So go back to – now we're talking about three different things. But go back to my original question pertaining to 647 and whether he was intoxicated or whether he was under the influence of street drugs. My view of the record is that there was evidence indicating either one of those things may have been true. And so my question is – and you can – if you would just accept that for purposes of my question. Absolutely. If that's the case, then why does it matter that they may have been wrong about whether he was intoxicated or under the influence of drugs? The question – I think the question to look at is whether he appeared intoxicated or not. And evidence of that – Why? Why is that the question, counsel? If either way – this is what I'm struggling with. If the – if the code allows them to take him into custody either way, why does it matter? The way I'm using intoxicated is intoxicated either under alcohol or street drugs. Okay. All right. Intoxicated – but for someone to have probable cause to arrest someone for being intoxicated under drugs or alcohol, they must be exhibiting signs of such intoxication. The evidence – So now we're back to the factual point. You think that there was not a reasonable basis for them to consider or to come to that conclusion? No, there was not a reasonable basis for them to come to that conclusion. The evidence presented by the three witnesses, the appellees have set forth, show that he was acting strangely, but he was not exhibiting any of the classic signs of intoxication, certainly not the signs that the officers identified, that he was out walking his dog in his neighborhood. He may have alarmed the neighbors, but that doesn't necessarily mean he's acting intoxicated. Someone acting strangely does not equate someone acting intoxicated, allowing them to be arrested. If that was the case, you could arrest anybody who was acting strangely or having some kind of mental episode. So it seems to me, frankly, that what you're really doing is you're saying, based on the evidence you put in the record, that the evidence the police are putting on the record is not true. We're framing it in the way that I believe the Supreme Court in the Ninth Circuit has determined it should be framed at this procedural stage. Because it's... Well, my worry is that whenever I look at these situations, I don't look whether it's a question of fact, because one might find a question of fact every time. But when we have a motion that has to deal with qualified immunity, the, if you will, advantage you have is that I look at your facts as that you would want them intended. If I look at this record and I look at your facts, can I put in the record that the officers thought that he was drunk? No, absolutely not, Your Honor. That's not facts that you would have in this record to pursue. In fact, you must then suggest that's false. Yes, Your Honor, although I wouldn't necessarily put it that way. I necessarily put it that you must only look at our facts and accept them as true. Well, that's what, that, I mean, my worry about these is we've got a lot of our decisions which say all question of fact, and we turn it on its head. I'm having a tough time with that because every immunity question that I've ever said, I just take whatever the plaintiff's facts are, and if in fact I can overcome the plaintiff's facts, then I win. If I don't, of course, I was a defense lawyer at that time, if I can't, then I'm out. Your Honor, that's the correct way to view these cases. If there's material issues of fact, you take the plaintiff's facts and accept them as true, and then you apply them to the qualified immunity analysis, and if those facts establish a violation of clearly established law, then there's no qualified immunity. Well, but they can be wrong. They just can't be unreasonably wrong, right? That's what makes it a little bit of a twist, and it's an important twist. The unreasonable is we don't second-guess police officers in the field, and we certainly recognize that they have to make quick decisions, and so there is more deference there, counsel. So if you could please address that in your remarks, that would help me. Your Honor, there is more deference, but in a qualified immunity analysis, the reasonableness is subsumed in the probable cause issue. You look at whether there were indications that Jeremy Lum was intoxicated. The evidence set forth by the appellees in this case shows every indication that he was not acting intoxicated, and, in fact, that the officers knew he was having a mental health episode, but did nothing about it. Okay. So could I stop you there? When you say the evidence indicates that he was not acting intoxicated, why do I have to look farther than the fact that the neighbors thought that he was under the influence of street drugs? I don't even have to look at the police officer's testimony to say these third parties did indeed have that impression. What do I do about that? I believe the statement by the neighbor has been skewed. He was making an assumption when asked what did his behavior lead you to believe. He said, well, originally I thought he was under the influence of drugs. You know, he's acting a little bit strangely. They did not tell the police officers that. The police officers, in fact, did not speak to the Arch Little guy at all. I'm not saying that the police officers arrived at their conclusion because of what the neighbors said. My point is, however he exhibited, whatever Mr. Lum's appearance may have been, it left those folks with that impression, I think. The evidence certainly suggests that. So why would the police officers be unreasonable in reaching the same conclusion? Well, we should look to their objective observations, the actual facts that they saw, not their assumptions. Those are really not evidence and not something that shouldn't be looked at. These are laypeople who are just kind of putting together facts that are surprising their home at, you know, 11 a.m. But laypeople can come to you. That's a standard, right? That's straight out of your evidence class from law school. So lay folks can opine on whether somebody appears intoxicated. We all can. On drugs, I'm not sure, Your Honor. But what they objectively saw is that he was acting strangely. Okay. He was walking normally, did not smell like alcohol, he wasn't staggering, wasn't stumbling, wasn't slurring his words. He was barefoot and he seemed confused. I think they said those things. He was barefoot and acting confused. Okay. Now, that would be a leap to conclude that, based on that evidence, he must have been reasonably on drugs and could be arrested. He was acting strangely. But strange doesn't mean intoxicated, especially when the officers knew that he was having a mental health episode, or at least there's evidence that shows that. Let's talk about that for just a minute. I think that there's indications that the folks at the Fourth Amendment level, at the arrest level, at least one of them, was aware that he had a mental health history, right? Correct. And Sergeant Walters was. And Sergeant Pease suspected he was having a mental health issue because he was asking Jeremy questions. Jeremy's answers to those questions were disjointed from the questions themselves. And he appeared to be having visual hallucinations. And he suspected that they were he was having a mental health episode. He conferred with all of the officers that he might be having this episode. But then it was decided that he should be taken in as a drunk. And they never told anybody at the jail about this mental health issue. There was no indication, no indication he was showing, exhibiting signs of drug intoxication, especially when you have the officers who testify he was having a mental health episode. They thought that. How can they reasonably conclude he's on drugs when they think he's having a bipolar episode? I think you've answered my question, sir. If I could change the issue just a little bit, I want to talk about the State law immunity issue. It seems to me that liberals suggest, that's our case of 632 Fed 3rd, suggest that denial of immunity under the state law is immediately appealable if the immunity functions as an immunity from suit rather than a defense to liability. Would you agree with that? I would agree that liberal provides that and what you said, but that it was also examining immunity under government code 820.2. Well, I understand what it was doing, but I'm just trying to now move you to the next question. If we're talking about immunity from suit, it seems to me that this is immunity from suit. It's what we're talking about here. That California code 855.8 is in the California Tort Claims Act, and therefore, it seems to me there's immunity from suit under the California Tort Claims Act. I won't argue with you on that point, Your Honor. I think it's unclear, at least in the cases I was looking through. I was unable to find one that specifically said 855.8 was immunity from suit. But even accepting that, looking at 855.8, it is a immunity from a failure to diagnose. There's no allegation of a failure to diagnose here. Well, but just a minute. It seems to me that the California Court of Appeals case in Johnson was pretty clear that that would be applicable in this case. But the district court just ignored it. The district court said, well, I don't think the California Court of Appeal knows what they're doing, and this isn't a Supreme Court case, and so I'm not going to deal with it. Well, two things, Your Honor. It is from 1983, and I think the Johnson case is a court of appeal case. It's fairly vague. It's not the definitive case on the issue. You shepherdize it, and you don't find a whole lot following it on that. Well, but that doesn't make any difference. If it does that, we're not free to disregard it, even if you can't shepherdize it. That leads me to my second point, Your Honor, which is this case is distinguishable. There, looking at that case, the Court found that the allegation of a duty to summon medical care was broader than the immunity for failure to diagnose. In other words, the plaintiffs were alleging a duty to summon medical care. The defendants were alleging an immunity for failure to diagnose. They, the Court, held that that immunity was inapplicable. Here, plaintiffs are essentially alleging, when Jeremy's in custody, a failure to provide him with medical care, to provide him with a psychiatric evaluation, even though they knew he was bipolar, even though he told them he was bipolar. He told them he was bipolar. It wasn't a diagnosis problem here at all. There's no diagnosis problem. And I don't think the Johnson case is applicable because the Court specifically held that a failure to provide medical care is not, doesn't, when you allege that, you're not. Roberts. Johnson specifically says what you just said. That's what it says. I mean, it specifically says that if it's a failure to summon medical care, that's an, he doesn't get immunity. What it held, I mean, that's what it says. What it held, Your Honor, was that the 855 immunity is narrower than the duty to summon medical care. Precisely. Right. That's what I said. Yes. So the district judge seems to have been wrong when he said they were screwing and didn't know what they were talking about. This might be a good time to say yes. Yes. Thank you, Your Honor. I mean, it does seem to be apparent. I don't mean to be glib, but it does seem to be apparent this is qualitatively different. That's what I'm trying to argue. We're arguing over each other on the same point. I think you're agreeing. Yes. All right. I see my time's almost up. If the Court has no other questions, I will submit. Okay. Thank you. Thank you, Your Honors. Your Honors, with respect to the false arrest, the State law false arrest claim, I would point out that it is not alleged against anybody other than the arresting officers. So Officer Mendoza, whatever he did, he's not a defendant for that claim for relief. And there is a case that... Well, but you didn't really answer my question. Is that only as to Mendoza, the State law false arrest claim? He's alleged to be... He's a defendant in the wrongful death cause of action as well. Now you're ahead of me. Because I thought Officer Mendoza was the fellow at the jail. That's what I... Yes. Okay. So what you're saying, if I'm understanding you correctly, is that he's the one who's not a defendant on this claim. As to the State law false arrest claim, yes, Your Honor. Officers in the field, right? Who are the defendants of the State law false arrest claim? It's the City of Lathrop and the arresting officers, Pease, Davis, and Walters. And did anybody ever rule on that? The district court? The district court did rule on that and denied immunity under both 855.8. And we believe wrongly, as this Court has indicated. Not only is there the Johnson case, but there's a more recent case called Orrin that we cited. Granted, it's a State law, State court unpublished decision, which this Court can review. It's a 2010 case that also found immunity. Counsel, how does Johnson help you on the false arrest claim? Well, I agree that Johnson... You stole my question right out of my mouth. I can't see how it even applies. Well, but the Price case, which we also cited, specifically said that 820.2, the State law immunity, discretionary immunity, quote, provides immunity to peace officers for the discretionary acts in arrest situations, end quote. It's the only case that we found on point. Nobody cited anything to the contrary. It's a Federal case from the Southern District of California. And we think it provides immunity. All right. I have your argument. Thank you. Thank you, Your Honors. Case 12-15979, Lum v. San Joaquin is submitted, and we'll now pick up USA v. Mounts and Carlucci.
judges: Fernandez, Smith, Christen